**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC, and DISH Network L.L.C.,

                                 Plaintiffs,

     v.

Kamran International Trade Limited, and Muhammad Arshad Butt,

                                 Defendants.

**CIVIL ACTION NO. 17-CV-** 5057

**COMPLAINT**

---

Plaintiffs Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC, and DISH Network L.L.C., by and through their undersigned attorneys, for their Complaint, allege as follows:

### NATURE OF THE ACTION

1.      This copyright and trademark infringement action arises out of a global pirate television service provided to customers through the "Crown TV" set-top box. For a one-time, up-front device payment and a renewable paid annual subscription, Crown TV customers in the United States receive unlicensed television channels and television programs from India, Pakistan, and other countries. Among the victims of this piracy are Plaintiffs Asia TV USA Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom18 Media Private Limited, ARY Digital USA LLC (collectively, the "Network Plaintiffs"), and DISH Network L.L.C., which holds certain exclusive rights from the Network Plaintiffs to distribute programming in the United States.

2.      Plaintiffs are the legal and beneficial owners of exclusive rights to exploit the Network Plaintiffs' copyrighted television programming (the "Copyrighted Programs") in the

1

United States. Under United States copyright law, Plaintiffs have the exclusive rights to, among other things, reproduce, distribute, and publicly perform their Copyrighted Programs.

3.    Upon information and belief, Defendants Kamran International Trade Limited ("Kamran") and Muhammad Arshad Butt ("Butt"), acting in concert with a common purpose and scheme, have set up a pirate broadcasting network that, without permission and without compensation to Plaintiffs, brazenly captures entire channels of the Network Plaintiffs' television programming and streams that programming over the internet to United States users of the Crown TV device, twenty-four hours a day, seven days a week (the "Crown TV Retransmission Service").

4.    Defendants monetize the Crown TV Retransmission Service by selling the Crown TV device, through local resellers, to the public, including United States consumers, for up to an advertised $299 per unit at retail, which includes the first year subscription fee. Defendants charge approximately $150 to renew the annual subscription after the first year of service. Defendants recently began advertising a subscription based model for a fee of $12.50 a month. Each Crown TV device includes a software interface for Crown TV users to access and view infringing streams of the Network Plaintiffs' copyrighted television programming.

5.    The Crown TV Retransmission Service accomplishes this massive piracy by directly streaming the Networks Plaintiffs' Copyrighted Programs to Crown TV users in the United States from servers located in the United States and elsewhere.

6.    Upon information and belief, Defendants (1) capture the Network Plaintiffs' broadcasts; (2) reproduce digital copies of those broadcasts to store on United States servers; (3) distribute digital video copies of those broadcasts; and (4) retransmit these infringing copies of the Copyrighted Programs over the internet to Crown TV users in the United States. In these

ways, Defendants directly infringe Plaintiffs' rights in the Copyrighted Programs by reproducing, distributing, and publicly performing those programs without consent.

7.      Additionally, Kamran (1) provides the infringing Crown TV Retransmission Service to all purchasers of the Crown TV device; (2) aggressively advertises and promotes the Crown TV device's capacity to deliver the Network Plaintiffs' Copyrighted Programs to users of the Crown TV device without payment to Plaintiffs; (3) upon information and belief, exercises control over the servers that facilitate the unauthorized streaming of Copyrighted Programs to Crown TV users; and (4) directly profits from the massive infringement made possible by the Crown TV device, while declining to take any meaningful steps to stop the rampant infringement taking place through Kamran's digital premises and facilities, despite receiving many cease-and-desist letters from Plaintiffs. Upon information and belief, Butt personally directs, supervises, controls, and participates in each of these acts, and similarly directly profits from the massive infringement made possible by the Crown TV device.

8.      Kamran has built its business model around blatant copyright infringement, brazenly advertising and promoting the capability of the Crown TV device to provide users with infringing streams of the Copyrighted Programs, including publicizing lists of Plaintiffs' television channels available on the Crown TV device without Plaintiffs' authorization. In doing so, Kamran uses the Network Plaintiffs' unique channel logos and trademarks—including by building them into the Crown TV device's interface—to intentionally deceive consumers by giving the false impression that Defendants provide lawful broadcasts of the channels with the Network Plaintiffs' approval or are otherwise associated with the Network Plaintiffs.

9.      Defendant Butt owns and controls Kamran and the website for the Crown TV device. On information and belief, Defendant Butt actively directs, participates in, and

financially benefits from Kamran's infringement.

10.     The Crown TV Retransmission Service's unauthorized copying, distribution, and public performances of the Copyrighted Programs cause Plaintiffs irreparable harm in a number of ways, including (1) directly competing with authorized subscriptions for Plaintiffs' television packages, thereby causing lost market share and price erosion for legitimate services; (2) disrupting Plaintiffs' relationships with authorized distribution partners in the United States; (3) depriving Plaintiffs of their exclusive rights to control the distribution, timing of distribution, and quality of the Copyrighted Programs; and (4) interfering with Plaintiffs' ability to further develop the lawful market for internet distribution of the Copyrighted Programs in the United States.

11.     As a result of Defendants' unlawful conduct, Plaintiffs are entitled to their damages and Defendants' profits from copyright infringement, trademark infringement and unfair competition, and unlawful deceptive acts and practices, as well as permanent injunctive relief barring Defendants from (1) reproducing, distributing, and/or publicly performing the Copyrighted Programs in the United States; (2) using in any manner the trademarks of the Network Plaintiffs or any variation thereof, or otherwise infringing those trademarks; or (3) inducing, encouraging, causing, facilitating, and/or materially contributing to the unauthorized reproduction, distribution, and/or public performance of the Copyrighted Programs in the United States by others.

**THE PARTIES**

12.     Plaintiff Asia TV USA Ltd. ("Zee") is a corporation organized under the laws of the State of Wyoming, with its principal place of business located at 350 Fifth Avenue, Suite 7240, New York, NY 10118. Zee provides Hindi and other non-English language television

4

channels, including Zee TV, Zee Cinema, Zee Bangla, Zee Action, Zee Classic, Zee News, Zee Anmol, Zee Telgu, & TV, & Pictures, Zee Zindagi, Living Foodz, Zing Asia, Zee Punjabi, ETC Bollywood, and Zee Salam (the "Zee Channels"). Zee owns copyrights in works that are broadcast on the Zee Channels, including the right to reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

13.     Zee is licensed to use the unique channel logos and trademarks that are associated with and prominently displayed during each broadcast of the Zee Channels (the "Zee Marks"). The Zee Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the Zee Channels, including in the United States, by Zee and its affiliates, including prior to Defendants' infringement discussed below.

14.     Plaintiff MSM Asia Ltd. ("MSM") is a corporation organized under the laws of the United Kingdom, with its principal place of business located at One Six Six, Third Floor, 166 College Road, Harrow, Middlesex, HA1 1BH, United Kingdom and its registered office located at 25 Golden Square, London, W1F 9LU, United Kingdom. MSM is a wholly owned indirect subsidiary of Sony Pictures Networks India Private Limited ("SPNI"), located at Interface Building 7, Off Malad Link Road, Malad West, Mumbai, 400064, India. SPNI has appointed MSM as its exclusive distributor of certain Hindi language television channels, including Sony SET, SET Max, Sony Mix, SAB, and Ten Sport (collectively, the "MSM Channels") in the territories of, among others, the United States and Canada. SPNI owns copyrights in works that are broadcast on the MSM Channels, including the right to reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

15.    The affiliates of MSM own the unique channel logos and trademarks that are associated with and prominently displayed during the broadcast of the MSM Channels (collectively, the "MSM Marks"). MSM is authorized to use and include the MSM Marks on the MSM Channels. The MSM Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the MSM Channels, including in the United States, by MSM and its affiliates, including prior to Defendants' infringement discussed below.

16.    Plaintiff Star India Private Ltd. ("Star") is a corporation organized under the laws of India, with its principal place of business located at Star House, Urmi Estate, 95, Ganpatrao Kadam Marg, Lower Parcel, Mumbai 400013, India. Star provides Hindi language television channels, including Star India Plus, Life OK, Star Gold, Star Movies, Star World, Star Sports, Star Select, Star Utsav, Star Vijay, and Star Jalsha (collectively, the "Star Channels"). Star owns copyrights in works that are broadcast on the Star Channels, including the right to reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

17.    Star owns and/or is licensed to use the unique channel logos and trademarks that are associated with and prominently displayed during each broadcast of the Star Channels (collectively, the "Star Marks"). The Star Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the Star Channels, including in the United States, by Star and its affiliates, including prior to Defendants' infringement discussed below.

18.    Plaintiff Viacom18 Media Private Limited ("Viacom18") is a company registered under the laws of India, with its principal place of business located at Zion Biz World, Subhash Road 'A', Vile Parle (East), Mumbai, 400057, Maharashtra, India. Viacom18 broadcasts various Indian language television channels, including Colors (in India), Colors UK (in the United

Kingdom), Colors MENA (in the Middle East and North Africa), Aapka Colors (in the United States), and MTV India (collectively, the "Viacom18 Channels"). Viacom18 owns copyrights in works that are broadcast on the Viacom18 Channels, including the right to reproduce, distribute, and publicly perform those works in the United States, including but not limited to the registered copyrighted works listed in Exhibit A hereto.

19.    Viacom18 owns the unique channel logos and trademarks that are associated with and prominently displayed during the broadcast of content on the Viacom18 Channels (collectively, the "Viacom18 Marks"). The Viacom18 Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the Viacom18 Channels, including in the United States, by Viacom18 and its affiliates, including prior to Defendants' infringement discussed below.

20.    Plaintiff ARY Digital USA, LLC ("ARY") is a limited liability corporation organized under the laws of New York, with its principal place of business located at 76 North Broadway, Hicksville, New York 11801. ARY broadcasts Urdu and English language television channels, including ARY QTV, ARY Digital, ARY Music, ARY Zauq, ARY Zindagi, and ARY News (collectively, the "ARY Channels"). ARY owns copyrights in works that are broadcast on the ARY Channels, including the right to reproduce, distribute, and publicly perform those works in the United States.

21.    ARY owns the unique channel logos and trademarks that are associated with and prominently displayed during each broadcast of the ARY Channels (the "ARY Marks"). The ARY Marks have been used continuously in commerce for several years in the broadcasting and advertisement of the ARY Channels, including in the United States, by ARY and its affiliates, including prior to Defendants' infringement discussed below.

7

22.     Plaintiff DISH Network L.L.C. ("DISH") is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112. DISH is the fourth largest pay-television provider in the United States, delivering copyrighted programming to millions of subscribers nationwide by means of satellite and over-the-top ("OTT") services, whereby programming is delivered using a public internet infrastructure. DISH's subscribers enjoy access to hundreds of video and audio channels, including a diverse line-up of international channels.

23.     DISH contracts for and purchases rights for most of the international channels distributed on its platform from networks and their agents, such as the Network Plaintiffs. Pursuant to written agreements, DISH has the right, and in many instances the exclusive right, to reproduce, distribute, and publicly perform in the United States the works that air on certain of the Network Plaintiffs' channels, by means including satellite, OTT, internet protocol television ("IPTV"), and the internet. DISH also has the rights, and in many instances the exclusive right, to use the logos and trademarks that correspond with these international channels in the course of distributing these channels in the United States.  These written agreements were in effect at all relevant times and are currently in effect.

24.     Defendant Kamran is a company organized under the laws of Hong Kong, with its principal place of business in Hong Kong. Kamran's current registered address is 20/F, Champion Building, 287-291 Des Voeux Road Central, Sheung Wan, Hong Kong according to the Hong Kong Companies Registry.

25.     Defendant Butt is a natural person believed to be residing in Pakistan. According to the Hong Kong Companies Registry, Butt is a Director of Kamran, signed Kamran's most recent Hong Kong Companies Registry Annual Return, dated March 29, 2017, and wholly owns

Kamran, holding all three million of its outstanding shares. Although the WHOIS domain name registration information for CrownIPTV.com, the domain name of the website for the Crown TV device (the "Crown TV Website"), is now concealed by use of a proxy registration service, on information and belief Butt is the registrant, and Kamran is the registrant entity, of the CrownIPTV.com domain name. Upon information and belief, Defendant Butt is the sole principal of Kamran and personally directs, supervises, controls, participates in, and financially benefits from the unlawful conduct of Kamran. Upon information and belief, there is a unity of interest and ownership among and between Kamran and Butt such that Kamran is the alter ego of Butt.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* and this Court's pendant jurisdiction.

27.     Personal jurisdiction over Defendants is proper because they have each purposefully directed their conduct towards, and have purposefully availed themselves of the privileges of conducting business activities within, the State of New York by, among other things, transmitting, selling and supplying, and offering to transmit, sell and supply, the Crown TV Retransmission Service and/or Crown TV devices to customers and/or business partners in the State of New York and the Eastern District of New York, causing injury to Plaintiffs in this State and in this District.

28.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

9

A.    **Defendants' Unlawful Conduct**

29.    Defendants manufacture the Crown TV device and offer it for sale to consumers through local resellers, including in the United States, the State of New York, and the Eastern District of New York. At least as recently as June 24, 2017, Kamran, through local resellers in Jackson Heights, Queens, New York, offered and sold numerous models of Crown TV devices for between $200 and $280 to consumers in this judicial district. As of the date of filing of this Complaint, Kamran, through its Crown TV Website, promotes the sale of the Crown TV Retransmission Service for a monthly fee of $12.50.

i.    <u>Crown TV Video Streaming</u>

30.    Upon information and belief, Kamran and Butt (1) capture television signals being transmitted by Network Plaintiffs and other broadcasters in India, Pakistan, and elsewhere; (2) convert those signals as needed into a digital format suitable for streaming over the internet; (3) create and disseminate digital copies of Network Plaintiffs' copyrighted television programming to store on United States servers; and (4) transmit the pirated video streams of the Network Plaintiffs' programming to Crown TV users in the United States, all for the unlawful purpose of engaging in unauthorized public performance and distribution of Plaintiffs' Copyrighted Programs.

31.    Plaintiffs have not authorized the Defendants to publicly perform, transmit, or retransmit the Network Plaintiffs' television channels or any of the Copyrighted Programs. Nor have Plaintiffs authorized the Defendants to make copies of the Copyrighted Programs. Defendants' retransmission of the Network Plaintiffs' broadcasts and programs in the United States violates Plaintiffs' exclusive public performance rights and constitutes direct copyright infringement. Defendants' reproduction and distribution of copies of the Network Plaintiffs'

10

broadcasts and programs in the United States violates Plaintiffs' exclusive reproduction and distribution rights and constitutes direct copyright infringement.

      ii.   <u>The Crown TV Device</u>

32.    Defendants monetize the Crown TV Retransmission Service by selling Crown TV devices and subscriptions to United States consumers and equipping the Crown TV device with the infringing Crown TV Retransmission Service.

33.    The Crown TV device is a set-top box that delivers streaming television programming to customers over the internet without the customers paying subscription fees to an authorized licensee such as a cable, satellite, or other television services provider. Instead, Defendants charge Crown TV users a subscription fee for access to the Crown TV Retransmission Service and the unlicensed content. A one year subscription to the Crown TV Retransmission Service is built into the cost of the Crown TV device. After that subscription expires, users may pay $150 a year to continue to subscribe to the Crown TV Retransmission Service. Kamran through its CrownTV Website, recently began advertising subscription to the CrownTV Retransmission Service for a monthly fee of $12.50.

34.    The Crown TV device connects to a Crown TV user's internet connections, through a WiFi signal or an Ethernet cable, to access digital content necessary for the Crown TV device to operate and transmit infringing streaming video. The Crown TV device connects to a Crown TV user's television set, through a video cable, to display its interface and unlicensed television programming.

35.    Once the Crown TV device is connected to a user's television set and internet connection, it is ready for use. No setup process is required.

36.    After a user turns on the Crown TV device, a main menu screen loads. That main

menu screen contains icons marked "TV," "Movies," and "Drama," as well as icons leading to screens to adjust the device and Crown TV Retransmission Service account options.

    iii.    <u>The TV Section</u>

37.    The "TV" section of the Crown TV device retransmits programming, including the Network Plaintiffs' Copyrighted Programs, over the internet to Crown TV users.

38.    When selected, the TV section automatically loads separate icons for each channel available for viewing on the Crown TV device, including icons for the Network Plaintiffs' channels.

39.    The following icons available through the TV section of the Crown TV device allow Crown TV users to select and stream the Network Plaintiffs' pirated television channels and Copyrighted Programs:

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | ARY Digital |
|  | ARY Musik |

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | ARY News |
|  | ARY QTV |
|  | ARY Zindagi |
|  | Colors India |

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Colors HD |
|  | MTV |
|  | LIFE OK HD |
|  | Sony Max |

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Sony |
|  | Sony Mix |
|  | Sony SAB |
|  | Star Gold |

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Star Plus HD |
| | Star Plus |
| | Zee Cinema |
| | Zee TV |

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Zee TV HD |
| | Zee Anmol |
| | Zee Bangla |
| | Zee Classic |



| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
| | Zee News |
| | Zee Punjabi |
| | Zee Salaam |

| Infringing Crown App Channel and icon | Plaintiffs' Programming (all Live Mode) |
|---|---|
|  | Zee Telgu |

40.     As shown above, the channel icons and channels themselves that are transmitted on the Crown TV device make infringing use of the protected Zee Marks, MSM Marks, Star Marks, Viacom18 Marks, and ARY Marks (collectively, the "Protected Marks").

41.     The Crown TV device TV section also allows users to view channels grouped by country (e.g., India and Pakistan) and, for India, broken down further by language (e.g., Hindi and regional languages).

42.     The Crown TV device and its TV section have no purpose other than to deliver infringing television programming to Crown TV users.

43.     The table in Paragraph 39 sets forth only those TV channels that stream the Network Plaintiffs' Copyrighted Programs. Upon information and belief, the TV section is used by Defendants to unlawfully distribute and publicly perform without permission the copyrighted television programming of numerous other copyright owners as well.

44.     Upon information and belief, the availability of infringing programming from the Network Plaintiffs represents a significant draw and motivation for purchasers of the Crown TV device and enables Defendants to sell more Crown TV devices at higher prices than they

otherwise could. Unbranded Android-based set-top boxes without such access to infringing programming sell for as low as $20 at retail.

45.     As discussed above, Defendants even charge Crown TV users subscription fees for access to the infringing Crown TV Retransmission Service. Upon information and belief, because Defendants do not pay licensing fees for Plaintiffs' Copyrighted Programs, Defendants realize all or most of these subscription fees as profits.

   iv.    <u>Defendants Aggressively Market the Infringing Capabilities of the Crown TV Device, Showing Their Willful Copyright and Trademark Infringement</u>

46.     Defendants aggressively advertise and promote the Crown TV Retransmission Service and the infringing capabilities of the Crown TV device. Defendants' marketing materials regularly tout the ability of Crown TV users to stream copyrighted television programming.

47.     For example, Defendants promote the Crown TV device on the Crown TV Website, as follows:

> ENJOY HUNDREDS OF HD QUALITY LIVE, THOUSANDS OF HOURS OF VOD ON-DEMAND.
>
> Crown TV brought all the available content on internet to a single set top box, Crown TV makes it easier for it[]s customers to enjoy latest TV Shows, Movies, Serials and many more activities to do without any hindrance[.] Crown TV enables the consumers to explore the wide world of Internet through our unmatchable technology, which brings the entire global entertainment to your television at the click of a button. Crown TV is always connect for providing best Quality (HD) to it[]s customers.

48.     Defendants further promote the types of content available through the Crown TV device, on another page on the Crown TV Website:



49.     The Crown TV website also displays a promotional video that specifically shows icons for many of the Network Plaintiffs' television channels, thereby promoting the availability of unlicensed programming from the Network Plaintiffs through the device:











50.     Upon information and belief, Defendants also operate a Facebook page at https://www.facebook.com/Crown-IPTV-744843535611246/ (the "Crown TV Facebook Page"). Via the Crown TV Facebook Page, Defendants advertise and promote the availability of infringing television programming on the Crown TV device, including displaying the same promotional video identified in Paragraph 49 above. In the "About" section of the Crown TV Facebook Page, Defendants identify themselves as a "TV Network."

51.     Upon information and belief, Defendants also operate another Facebook page at https://www.facebook.com/profile.php?id=100006568037724 (the "Second Crown TV Facebook Page"), to which the Crown TV Website provides a direct hyperlink. The Second Crown TV Facebook Page also advertises and promotes the availability of infringing television programming on the Crown TV device, as in the following exemplary screenshots listing the channels of the Network Plaintiffs available for streaming on the Crown TV device:







**PLAINTIFFS' CHANNELS**

52. Defendants profit from copyright infringement carried out via the Crown TV

Retransmission Service. Upon information and belief, the more pirated television programming

available to Crown TV customers, the more Crown TV devices Defendants sell. Defendants also profit from the sales of subscriptions to the Crown TV Retransmission Service, without having to pay the significant cost of licensing Plaintiffs' Copyrighted Programming. Defendants thus rely for the success of their business on the infringing public performances they transmit through the Crown TV Retransmission Service.

53.     Prior to filing this lawsuit, Plaintiffs, through their agents, sent more than 75 cease-and-desist letters to Defendants at the contact information listed on the Crown TV Website, demanding that Defendants stop infringing and contributing to the infringement of Plaintiffs' rights in Plaintiffs' Copyrighted Programs. The cease-and-desist letters identified infringing channels and provided a representative list of the Network Plaintiffs' programs, streamed without authorization through the Crown TV device. Defendants did not respond to any of the cease-and-desist letters. Rather, despite receipt of these notices, Defendants continue to deliberately operate the Crown TV Retransmission Service, unlawfully provide the Network Plaintiffs' Copyrighted Programs through the TV section of the Crown TV device, and market, advertise, and promote the infringing capabilities of the Crown TV device, with full knowledge of the infringing nature of their activities.

**B.      Defendants Have Significant Contacts with the Forum**

54.     Defendants have purposefully directed their infringing conduct alleged above towards, and have purposefully availed themselves of the privileges of conducting business activities within, the United States, the State of New York, and the Eastern District of New York.

55.     Defendants conduct business throughout the United States, including within the Eastern District of New York, through the operation of the fully interactive and commercial Crown TV Website. Defendants advertise, promote, and offer for sale Crown TV devices to

27

customers within the State of New York and the Eastern District of New York through the fully interactive commercial Crown TV Website. Defendants sell Crown TV devices to retailers within the State of New York and Eastern District of New York that sell those Crown TV devices to consumers. Defendants have purposefully directed their illegal activities towards consumers in New York through such advertisement, promotion, offering for sale, and sale of Crown TV devices into the State of New York and the Eastern District of New York, causing harm to Plaintiffs in this State and this District.

56.    The Crown TV Website directs potential customers interested in purchasing a Crown TV device to call or email Kamran to obtain contact information for Crown TV retailers in their area—including retailers located in New York, including the Eastern District of New York—where Crown TV devices are available for purchase.

57.    Multiple local retailers in New York offer Crown TV devices for sale, including Cell Bell, NR Distributor and Wireless Tech. On May 8, 2016, Plaintiffs' investigator purchased a Crown TV device from local retailer NR Distributor located in Jackson Heights, Queens, New York.  On June 24, 2017, Plaintiffs' investigator purchased a Crown TV device from local retailer Wireless Tech located in Jackson Heights, Queens, New York.

58.    Upon information and belief, many other customers in the State of New York and the Eastern District of New York have purchased substantial numbers of Crown TV devices from Defendants through local resellers located in the State of New York and the Eastern District of New York and promoted on Defendants' fully interactive and commercial Crown TV Website.

59.    As alleged in more detail above, Defendants stream the Network Plaintiffs' Copyrighted Programs into the State of New York and the Eastern District of New York when Crown TV customers located in this State and this District use the Crown TV device to watch the

Copyrighted Programs over the internet.

60.     Upon information and belief, Defendants use multiple internet servers in the United States to deliver streaming content to Crown TV devices in the United States and to otherwise facilitate the operation of Crown TV devices and the delivery of content to those devices in the United States.

## FIRST CAUSE OF ACTION
## DIRECT COPYRIGHT INFRINGEMENT

61.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 60 above.

62.     Plaintiffs are the legal and/or beneficial owners of exclusive rights in the United States to reproduce, distribute, and publicly perform the Network Plaintiffs' Copyrighted Programs.

63.     The Copyrighted Programs are original audiovisual works that have been fixed in a tangible medium of expression and constitute copyrightable subject matter within the meaning of 17 U.S.C. § 102.

64.     Plaintiffs' copyrights in these programs originally arose under the laws of foreign nations that are parties to copyright treaties with the United States, including India and Pakistan, where the programs were authored and/or first published. Because the programs are non-United States works, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works. 17 U.S.C. §§ 101 & 411. Plaintiffs have nonetheless registered the Copyrighted Programs identified in Exhibit A.

65.     Under 17 U.S.C. § 106, Plaintiffs own the exclusive rights to reproduce the Copyrighted Programs, to distribute copies of the Copyright Programs to the public, and to publicly perform the Copyrighted Programs.

66.     By the actions alleged above, the Defendants have directly infringed and, unless enjoined, will continue to directly infringe Plaintiffs' copyrights and exclusive rights in the registered Copyrighted Programs identified in Exhibit A and all other Copyrighted Programs by unlawfully reproducing, distributing, and publicly performing the Copyrighted Programs in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106.

67.     The foregoing acts were and are conducted by the Defendants without Plaintiffs' authorization or consent and are not otherwise permissible under the Copyright Act.

68.     The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' exclusive rights in and to the Copyrighted Programs.

69.     With respect to registered Copyrighted Programs, Plaintiffs are entitled to seek up to $150,000 in statutory damages per work willfully infringed or, alternatively, Plaintiffs' actual damages and Defendants' profits attributable to the infringement, in accordance with 17 U.S.C. §§ 412 and 504.

70.     With respect to Plaintiffs' unregistered Copyrighted Programs, Plaintiffs are entitled to recover Defendants' profits attributable to the infringement and Plaintiffs' actual damages therefrom pursuant to 17 U.S.C. § 504.

71.     Plaintiffs are also entitled to recover from the Defendants costs and attorneys' fees pursuant to 17 U.S.C. § 505.

72.     The foregoing acts of infringement by Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated for or measured in money damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent

injunction prohibiting further infringements of the Copyrighted Programs and their exclusive rights under the Copyright Act by Defendants.

## SECOND CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

73.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 72 above.

74.     The Protected Marks are used by Plaintiffs in commerce in the United States and are entitled to full protection under the Lanham Act.

75.     By using the Protected Marks in connection with the viewing interface of the Crown TV device and in connection with the advertising, promotion, and sale of the Crown TV device and the Crown TV Retransmission Service, Defendants have caused and are likely to cause confusion in the minds of consumers and to create a false impression in the minds of consumers that Plaintiffs are affiliated, connected, or associated with Defendants' products and/or services, and/or that Plaintiffs sponsor or approve of such products and/or services, in violation of 15 U.S.C. § 1125(a).

76.     The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' rights in the Protected Marks.

77.     For their willful and deliberate violations of 15 U.S.C. § 1125(a), Defendants are liable to Plaintiffs for their profits from infringement and damages resulting from that infringement, as well as additional penalties and costs, pursuant to 15 U.S.C. § 1117.

78.     Plaintiffs are also entitled to injunctive relief pursuant to 15 U.S.C. § 1116 to enjoin and restrain Defendants from further violation of 15 U.S.C. § 1125(a).

## THIRD CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

79.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 78 above.

80.     Plaintiffs have established through prior use in commerce in the United States a valid and protectable interest in the Protected Marks and have built and created valuable goodwill in those Marks.

81.     With full knowledge of the Protected Marks, Defendants have subsequently and without authorization of any kind from Plaintiffs, used the same and/or similar trademarks in connection with the viewing interface of the Crown TV device and in connection with the advertising, promotion, and sale of the Crown TV device and the Crown TV Retransmission Service.

82.     Plaintiffs' unauthorized use of the Protected Marks permits Defendants to pass off the Crown TV Device and Crown TV Retransmission Service to the general public to the detriment of Plaintiffs and the unjust enrichment of Defendants.

83.     With full knowledge of the Protected Marks, Defendants have traded and continue to trade on the goodwill associated with those Protected Marks and to cause confusion or mistake or to deceive consumers and therefore infringe Plaintiffs' rights in the Protected Marks in violation of the common law.

84.     Defendants' conduct, as alleged here, constitutes trademark infringement and unfair competition under New York state common law. Defendants' actions have caused and are likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' products and/or services by Plaintiffs.

85.    The Defendants committed the foregoing acts willfully, maliciously, intentionally, purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs' rights in the Protected Marks.

86.    Defendants' acts entitle Plaintiffs to general and special damages as well as all of Defendants' profits arising from their unlawful conduct, to the full extent provided for by the common law of the State of New York.

87.    Plaintiffs have no adequate remedy at law and as such are entitled to an injunction restraining Defendants and their agents, employees, officers, alter egos, and all persons acting in concert with them, from engaging in any further such acts in violation of the common law of the State of New York.

**FOURTH CAUSE OF ACTION**
**UNLAWFUL DECEPTIVE ACTS AND PRACTICES**
**IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**

88.    Plaintiffs hereby incorporate by reference and reallege each and every allegation of Paragraphs 1 through 87 above.

89.    Defendants, without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in the Protected Marks, have used the Protected Marks in connection with the viewing interface of the Crown TV device and in connection with the advertising, promotion, and sale of the Crown TV device and the Crown TV Retransmission Service to the consuming public in direct competition with Plaintiffs' services and in violation of New York General Business Law § 349.

90.    Defendants' use of the Protected Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Crown TV device and the Crown TV Retransmission Service, and is likely to deceive the public

into believing that Plaintiffs are affiliated, connected, or associated with Defendants' products

and/or services, and/or that Plaintiffs sponsor or approve of such products and/or services.

91.    Defendants' deceptive acts and practices involve public sales activities of a

recurring nature.

92.    The Defendants committed the foregoing acts willfully, maliciously, intentionally,

purposefully, and with full knowledge of, conscious disregard of, and indifference to Plaintiffs'

rights in the Protected Marks.

93.    As a result of Defendants' activities, Plaintiffs have been damaged in an amount

to be proven at trial, which is not currently ascertainable.

94.    As a direct and proximate result of Defendants' acts and conduct, Plaintiffs have

sustained and will continue to sustain substantial, immediate and irreparable injury, for which

there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants

will continue to violate New York General Business Law § 349.  Plaintiffs are entitled to

permanent injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court grant judgment in favor of Plaintiffs and

against Defendants as follows:

a.    Permanently enjoining Defendants and their officers, agents, servants, and

employees and all those in active concert or participation with them, from (i) reproducing,

distributing, publicly performing, and/or in any way transmitting the Network Plaintiffs'

television programming, including the Copyrighted Programs; (ii) inducing, encouraging,

causing, facilitating, and/or materially contributing to the unauthorized reproduction,

distribution, public performance, and/or transmission of the Network Plaintiffs television

programming, including the Copyrighted Programs by others; (iii) distributing, selling, advertising, marketing, or promoting any Crown TV Device that contains, connects to, offers for download, transmits, assists in the transmission of, streams, hosts, provides access to, or otherwise distributes or publicly performs, directly or indirectly, by means of any device or process, the Network Plaintiffs television programming, including the Copyrighted Programs, without permission; and (iv) using in any manner the Protected Marks of the Network Plaintiffs or any variation thereof, or otherwise infringing these trademarks.

      b.     Awarding Plaintiffs statutory damages for Defendants' infringement of registered Copyrighted Programs or, in the alternative, Defendants' profits attributable to the infringement and Plaintiffs' actual damages therefrom pursuant to 17 U.S.C. §§ 412 and 504.

      c.     Awarding Plaintiffs Defendants' profits attributable to infringement of unregistered Copyrighted Programs and Plaintiffs' actual damages therefrom pursuant to 17 U.S.C. § 504.

      d.     Awarding Plaintiffs Defendants' profits and damages resulting from Defendants' violation of 15 U.S.C. § 1125(a), as well as additional penalties and costs for Defendants' willful and deliberate violations pursuant to 15 U.S.C. § 1117.

      e.     Awarding Plaintiffs general and special damages for all of Defendants' profits derived from their past unlawful conduct to the full extent provided for by the common law of the State of New York.

      f.     Awarding Plaintiffs damages for Defendants' violations of New York General Business Law § 349.

      g.     Awarding Plaintiffs their costs of prosecuting this action, including reasonable attorneys' fees;

h. Awarding Plaintiffs prejudgment interest at the highest legal rate allowed under law;

i. Directing Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the Judgment of the Court; and

j. Awarding Plaintiffs such other and further relief as this Court deems just, proper, and equitable.

Dated: August 25, 2017

Respectfully submitted,

By: _____ */s/ Robert D. Balin* _____

DAVIS WRIGHT TREMAINE LLP
Robert D. Balin
(RobBalin@dwt.com)
Lacy H. Koonce, III
(LanceKoonce@dwt.com)
George P. Wukoson
(GeorgeWukoson@dwt.com)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

*Attorneys for Plaintiffs Asia TV USA Ltd.,*
*MSM Asia Ltd., Star India Private Ltd.,*
*Viacom18 Media Private Limited, ARY Digital*
*USA LLC, and DISH Network L.L.C.*

# EXHIBIT A

| Network Plaintiff | Title | No. of Episode | Copyright Registration |
|---|---|---|---|
| Zee | Aur Pyar Ho Gaya | 213 | PA 1-959-953 |
| | Do Dil Bandhe Ek Dori Se | 223 | PA 1-959-954 |
| | Ek Tha Raja Ek Thi Rani | 85 | PA 2-018-576 |
| | Ek Tha Raja Ek Thi Rani | 85 | PA0002018576 |
| | Fear Files | 173 | PA 2-019-690 |
| | I Can Do That | 10 | PA 2-018-573 |
| | Jamai Raja | 335 | PA 2-015-340 |
| | Janbaaz Sindbaad | 4 | PA 2-019-777 |
| | Jodha Akbar | 257 | PA 1-959-957 |
| | Kaala Teeka | 14 | PA 2-018-574 |
| | Kumkum Bhagya | 421 | PA 2-015-342 |
| | Kumkum Bhagya | 69 | PA 2-019-787 |
| | Lajwanti | 39 | PA 2-019-577 |
| | Meri Sasu Maa | 1 | PA 2-019-775 |
| | Neeli Chatari Wale | 120 | PA 2-018-575 |
| | Neeli Chatari Wale | 128 | PA 2-019-800 |
| | Pavitra Rishta | 1326 | PA 1-959-956 |
| | Qubool Hai | 801 | PA 2-015-300 |
| | Sapne Suhane Ladakpan Ke | 537 | PA 1-959-955 |
| | Sarojini…Ek Nayal Pehal | 106 | PA 2-015-337 |
| | Satrangee Sasuraal | 265 | PA 2-015-336 |
| | Tashan-E-Ishq | 75 | PA 2-015-339 |
| | Yeh Vaada Raha | 44 | PA 2-018-578 |
| | Adaalat | 355 | PA0001924517 |
| | Adaalat | 365 | PA0001925930 |
| | Adaalat | 383 | PA0001939426 |
| | Adaalat | 387 | PA0001938892 |
| | Adaalat | 330 | PA 1-910-188 |
| | Bade Ache Lagte Hain | 618 | PA 1-910-187 |
| | Badi Door Se Aaye Hai | 65 | PA0001924518 |
| | Badi Door Se Aaye Hai | 85 | PA0001925917 |
| | Badi Door Se Aaye Hai | 136 | PA0001939419 |
| | Badi Door Se Aaye Hai | 150 | PA0001938921 |
| | Bharat Ka Veer Putra: Maharana Pratap | 208 | PA 1-910-180 |
| | Bharat Ka Veer Putra: Maharana Pratap | 271 | PA0001924515 |
| | Bharat Ka Veer Putra: Mahrana Pratap | 346 | PA0001938917 |
| | Bharat Ka Veer Putra: Mahrana Pratap | 292 | PA0001925929 |
| | Bharat Ka Veer Putra: Mahrana Pratap | 333 | PA0001939423 |

# EXHIBIT A

| | | | |
|---|---|---|---|
| **MSM** | Chandrakant Chiplunkar Seedi Bambawala | 34 | PA0001925915 |
| | Chandrakant Chiplunkar Seedi Bambawala | 83 | PA0001939421 |
| | Chidya Ghar | 814 | PA0001938922 |
| | Chidya Ghar | 655 | PA 1-910-193 |
| | Chidya Ghar | 728 | PA0001927520 |
| | Chidya Ghar | 749 | PA0001925916 |
| | Chidya Ghar | 800 | PA0001939420 |
| | CID | 1081 | PA 1-910-185 |
| | CID | 1139 | PA0001925914 |
| | CID | 1131 | PA0001924516 |
| | CID | 1169 | PA0001939427 |
| | CID | 1176 | PA0001938925 |
| | Crime Patrol | 415 | PA0001924837 |
| | Crime Patrol | 425 | PA0001932347 |
| | Crime Patrol | 449 | PA0001939428 |
| | Crime Patrol | 456 | PA0001938924 |
| | Ek Nayee Pehchaan | 102 | PA 1-910-181 |
| | Ek Nayee Pehchaan | 167 | PA0001924845 |
| | Hum Hai Na | 25 | PA0001925931 |
| | Hum Hai Na | 12 | PA0001924520 |
| | Hum Hai Na | 71 | PA0001939422 |
| | Hum Hai Na | 89 | PA0001938918 |
| | Humsafars | 12 | PA0001925913 |
| | Humsafars | 56 | PA0001939429 |
| | Humsafars | 73 | PA0001938923 |
| | Lapataganj | 245 | PA 1-910-196 |
| | Main Na Bhoolungi | 102 | PA 1-910-183 |
| | Preetam Payaare Aur Wohh | 63 | PA 1-910-191 |
| | Taraak Mehta Ka Ooltah Chasmah | 1498 | PA0001924843 |
| | Taraak Mehta Ka Ooltah Chasmah | 1554 | PA0001939417 |
| | Taraak Mehta Ka Ooltah Chasmah | 1578 | PA0001938920 |
| | Taraak Mehta Ka Ooltah Chasmah | 1416 | PA 1-910-199 |
| | Taraak Mehta Ka Ooltah Chasmah | 1511 | PA0001925918 |
| | Yam Hai Hum | 17 | PA0001938893 |
| | Dare 2 Dance | 6 | PA 1-928-702 |
| | Devon Ke Dev…Mahadev | 681 | PA 1-933-248 |
| | Devon Ke Dev…Mahadev | 699 | PA 1-927-287 |
| | Devon Ke Dev…Mahadev | 700 | PA 1-927-705 |
| | Diya Aur Baati Hum | 738 | PA 1-908-654 |
| | Diya Aur Baati Hum | 1118 | PA 2-015-323 |
| | Diya Aur Baati Hum | 1117 | PA 2-015-324 |
| | Ek Hasina Thi | 65 | PA 1-927-286 |
| | Ek Hasina Thi | 66 | PA 1-927-673 |
| | Ek Nayi Ummeed - Roshni | 20 | PA 2-015-305 |
| | Ek Nayi Ummeed - Roshni | 19 | PA 2-015-321 |

# EXHIBIT A

| | | | |
|---|---|---|---|
| **Star** | India's RAW Star | 4 | PA 1-928-701 |
| | India's RAW Star | 3 | PA 1-928-700 |
| | Laut Aao Trisha | 45 | PA 1-928-703 |
| | Mahabharat | 193 | PA 1-909-534 |
| | Mahabharat | 224 | PA 1-927-291 |
| | Mahabharat | 225 | PA 1-927-682 |
| | Saraswatichandra | 444 | PA 1-928-709 |
| | Savdhaan - India Fights Back 2 | 706 | PA 1-908-679 |
| | Tumhari Paakhi | 163 | PA 1-927-685 |
| | Tumhari Paakhi | 164 | PA 1-927-674 |
| | Ye Hai Mohabbatein | 168 | PA 1-927-672 |
| | Ye Hai Mohabbatein | 169 | PA 1-927-289 |
| **Viacom18** | Ashoka (Chakravartin Ashoka Samrat) | 5 | PA1-963-910 |
| | Balik Vadhu  - Kacchi Umar Ke Pakke Rishte | 1813 | PA 1-963-815 |
| | Balika Vadhu - Kacchi Umar | 1724 | PA 1-942-504 |
| | Balika Vadhu - Kacchi Umar | 1751 | PA 1-942-424 |
| | Balika Vadhu - Kacchi Umar Ke Pakke Rishte | 1642 | PA 1-928-019 |
| | Balika Vadhu - Kacchi Umar Ke Pakke Rishte | 1678 | PA 1-936-717 |
| | Balika Vadhu - Kacchi Umar Ke Pakke Rishte | 1774 | PA 2-019-346 |
| | Beintehaa | 148 | PA 1-928-023 |
| | Beintehaa | 178 | PA 1-936-702 |
| | Bigg Boss 8 | 26 | PA  1-42-411 |
| | Bigg Boss 8 | 49 | PA 1-942-513 |
| | Bigg Boss 8 | 68 | PA 1-990-978 |
| | Bigg Boss 8  Weekend ka vaar | 17 | PA 1-942-423 |
| | Bigg Boss 8 Weekend ka vaar | 10 | PA 1-942-503 |
| | Code Red | 12 | PA 1-963-656 |
| | Comedy Nights with Kapil | 109 | PA 1-936-721 |
| | Comedy Nights with Kapil | 122 | PA 1-942-425 |
| | Comedy Nights with Kapil | 96 | PA 1-936-683 |
| | Farah Ki Dawaat | 6 | PA 1-963-206 |
| | Jhalak Dikhlaa Jaa | 27 | PA 1-928-696 |
| | Jhalak Dikhlaa Jaa | 14 pt. 1 | PA 1-928-540 |
| | Jhalak Dikhlaa Jaa | 14 pt 2 | PA 1-928-704 |
| | Khatron Ke Khailadi | 2 | PA 1-963-655 |
| | Meri Aashiqui Tum se Hi | 90 | PA  1-942-511 |
| | Meri Aashiqui Tum se Hi | 22 | PA 1-928-011 |
| | Meri Aashiqui Tum se Hi | 52 | PA 1-936-718 |
| | Rangrasiya | 148 | PA 1-928-033 |
| | Sasural Simar Ka | 292 | PA 1-928-025 |
| | Sasural Simar Ka | 965 | PA 1-936-678 |
| | Shastri Sisters | 3 | PA 1-928-031 |

# EXHIBIT A

| | | | |
|---|---|---|---|
| | Shastri Sisters | 112 | PA 1-942-514 |
| | Shastri Sisters | 135 | PA 2-019-348 |
| | Shastri Sisters | 39 | PA 1-936-684 |
| | Shastri Sisters | 85 | PA 1-942-507 |
| | Swaragini | 19 | PA 1-963-208 |
| | The Anupam Kher Show | 3 | PA 1-936-681 |
| | The Anupam Kher Show | 9 | PA 1-936-679 |
| | Udaan | 111 | PA 1-990-977 |
| | Udaan | 15 | PA 1-936-682 |
| | Udaan | 61 | PA 1-942-512 |
| | Udaan | 88 | PA 1-942-508 |
| | Uttaran | 1457 | PA 1-936-680 |
| | Uttaran | 1428 | PA 1-928-029 |