UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ASIA TV USA LTD., et al,

                            Plaintiffs,                    REPORT AND
                                                 RECOMMENDATION
                                                 17 CV 5057 (FB)

     -  against  -

KAMRAN INTERNATIONAL TRADE
LIMITED and MUHAMMAD ARSHAD
BUTT,

                           Defendants.
------------------------------------------------------X

       On August 25, 2017, plaintiffs Asia TV Ltd., MSM Asia Ltd., Star India Private Ltd.,

Viacom 18 Media Private Limited, ARY Digital USA LLC (collectively, the "Network

Plaintiffs"), and DISH Network L.L.C. ("DISH") filed this copyright and trademark

infringement action against Kamran International Trade Limited ("Kamran") and Muhammad

Arshad Butt ("Butt"), seeking damages stemming from defendants' conduct in pirating plaintiffs'

TV programming through the sale of "Crown TV" set-top devices and related services.

(Compl.[1]).  Despite proper service of the Summons and Complaint upon the defendants,

defendants failed to answer or otherwise respond to the Complaint.  (See 9/19/17 Summons

Returned).[2]  On November 14, 2017, the Clerk of Court entered a default against defendant

Kamran, and on December 5, 2017, entered a default against defendant Butt.  (11/14/17 Entry of

Default;[3] 12/5/17 Entry of Default[4]).  Plaintiffs thereafter filed their motion for default judgment

---

[1] Citations to "Compl." refer to plaintiffs' Complaint filed August 25, 2017, ECF No. 1.
[2] Citations to "9/19/17 Summons Returned" refers to the executed summons, filed September 19, 2017, ECF No. 13.
[3] Citations to "11/14/17 Entry of Default" refer to the Clerk's Entry of Default, dated November 14, 2017, ECF No. 20.
[4] Citations to "12/5/17 Entry of Default" refer to the Clerk's Entry of Default, dated December 5, 2017, ECF No. 22.

on March 14, 2018, and the Honorable Frederic Block referred the motion to the undersigned on March 15, 2018.

For the reasons set forth below, it is respectfully recommended that plaintiffs be awarded $8,250,000.00 in damages.  It is further respectfully recommended that a permanent injunction enter against defendants Kamran and Butt, but that plaintiffs' motion for an injunction against unnamed third parties be denied without prejudice to renew once the third parties have been identified.  It is finally respectfully recommended that plaintiffs' request for post-judgment discovery be granted.

## FACTUAL BACKGROUND

Plaintiffs are TV broadcasters and distributors[5] who have the rights to reproduce, distribute and display various copyrighted television programming, the majority of which are in Hindi or Urdu and which largely originate in Pakistan and India (the "Programming").  (Compl. ¶¶ 1-2, 12-23).  Each of the Network Plaintiffs holds exclusive rights to reproduce, publicly perform, transmit and distribute the Programming in the United States through licensing agreements with cable and satellite carriers and other television distributors, including DISH. (Id. ¶¶ 22-23).

Defendant Kamran is alleged to be a Hong Kong company, whose principal place of business is located at 20/F Champion Building, 287-291 Des Voeux Road Central, Sheung Wan, Hong Kong.  (Id. ¶ 24).  Defendant Butt, who is alleged to reside in Pakistan, is a Director of Kamran, and signed Kamran's most recent Hong Kong Companies Registry Annual Return, dated March 20, 2017.  (Id. ¶ 25).  Plaintiffs allege that Butt wholly owns Kamran.  (Id.)

---

[5] Plaintiffs  Asia TV Ltd., MSM Asia Ltd., Star India Private Ltd., Viacom 18 Media Private Limited, and ARY Digital USA LLC, referred to herein as the "Network Plaintiffs," have conveyed certain exclusive rights to DISH Network, L.L.C. to distribute their programming in the United States.  (Compl. ¶ 1).

Plaintiffs further allege that defendant Kamran is the registrant entity of the Crown1PTV.com domain name, the website for the Crown TV device, and that Butt is the registrant.[6] (Id. ¶ 25).

According to plaintiffs, Kamran and Butt have established a "pirate broadcasting network" which captures channels of the Network Plaintiffs' television programming and streams that programming over the internet to the United States. (Id. ¶ 3). In order to receive the pirated programming, members of the public purchase the Crown TV Retransmission TV device, which includes a software interface for Crown TV users to access and view streams of the Network Plaintiffs' copyrighted television programming. (Id. ¶ 4). Plaintiffs allege that the Crown TV device connects the user through a WiFi signal or Ethernet cable, allowing the user to access the digital content and view it on the user's television set or computer screen. (Id. ¶¶ 33-35). During the initial year following the purchase of the Crown TV device, the subscription to the programming is free; after a year, users must pay an annual subscription price of $150 per year to continue to receive the programming. (Id. ¶ 33).

Plaintiffs allege that defendants "aggressively advertise and promote" the Crown TV device and its retransmission service, through the use of a promotional video with icons for many of the Network Plaintiffs' television channels, which is used to demonstrate the availability of unlicensed programming. (Id. ¶¶ 46-50). Plaintiffs allege that defendants also operate two Facebook pages – the Crown TV Facebook Page and the Second Crown TV Facebook Page – where they advertise the availability of the infringing programming. (Id. ¶¶ 50-51).

According to plaintiffs, prior to commencing the lawsuit, plaintiffs sent over 75 cease and desist letters to defendants at the contact information listed on the Crown TV website. (Id. ¶ 53).

---

[6] Plaintiffs acknowledge that the WHOIS domain named registration information for the Crown TV website is concealed by use of a proxy registration service, so this allegation connecting the defendants to the website is alleged on information and belief. (Id. ¶ 25).

Defendants did not respond to the letters and continue to operate the Crown TV Retransmission Service, unlawfully broadcasting the Network Plaintiffs' copyrighted programs. (Id.) Plaintiffs allege that they have not authorized the defendants to copy or transmit the Network Plaintiffs' Copyrighted Programs, nor have defendants been authorized to: "(1) capture the Network Plaintiffs' broadcasts; (2) reproduce digital copies of those broadcasts to store on United States servers; (3) distribute digital video copies of those broadcasts; [or] (4) retransmit these infringing copies of the Copyrighted Programs over the internet to Crown TV users in the United States." (Id. ¶¶ 6, 30).

On September 6, 2018, the Court held an inquest at which plaintiffs presented the testimony of Nicholas Braak, a private investigator with the Minsk Group. (Tr.[7] at 18). Defendants failed to appear. (Id. at 2).

During the inquest, Mr. Braak testified that he specializes in forensic investigations of intellectual piracy, fraud, and cyber-crime, and that he had been to retained by plaintiffs to investigate the Crown TV device and piracy of plaintiffs' programming. (Id. at 18). He viewed the Crown TV website to determine how to purchase a Crown TV device and discovered that the website provides a telephone number to contact but does not allow for purchases of the device over the internet. (Id. at 18-19). When he contacted the telephone number provided, he was given the name "Rony" and told to contact a cellphone number to arrange for the purchase of the device. (Id. at 22-23). When his calls to the phone number were not successful, he travelled to Jackson Heights, Queens, where he knew there were a large number of Indian and Pakistani businesses, to see if he could buy the device. (Id. at 23-24). After observing the device in several stores, Mr. Braak eventually purchased a device from a smoking store for $280 on May

---

[7] Citations to "Tr." refer to the transcript of the inquest hearing the Court conducted on September 6, 2018.

8, 2016.  (<u>Id.</u> at 24-26).  He performed forensic testing on the device and was able to connect the device through the internet so that it would stream live television programs 24 hours a day, seven days a week.  (<u>Id.</u> at 30).  He observed the logos and icons of the Network Plaintiffs on the guide and was able to view 42 different channels.  (<u>Id.</u> at 28).  He also viewed the promotional videos for the device on the YouTube website where the Crown TV device was demonstrated and advertised.  (<u>Id.</u> at 30-31).

Plaintiffs' Complaint contains four causes of action:  1) the first claim is for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 106; 2) the second claim is for trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a); 3) the third claim is for common law trademark violations and unfair competition; and 4) the fourth claim is for violations of the New York General Business Law § 349.  (<u>Id.</u> ¶¶ 61-94).  Plaintiffs seek statutory damages and injunctive relief.

DISCUSSION

I.  <u>Default Judgment</u>

A. <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u> <u>id.</u>  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

5

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and]. . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default

6

judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y.

Oct. 19, 1992).  Additionally, the Court may consider whether material issues of fact remain,

whether the facts alleged in the complaint state a valid cause of action, whether plaintiffs have

been substantially prejudiced by the delay involved, and whether the default judgment might

have a harsh effect on the defendants. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 62

(2d Cir. 1981).

     The burden is on the plaintiffs to establish their entitlement to recovery. See Clague v.

Bednarski, 105 F.R.D. 552, 553 (E.D.N.Y. 1985).  When a default judgment is entered, the

defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining

to liability.  See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d

Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  For the purposes of an inquest, a court accepts as

true all factual allegations in the complaint, except those claims relating to damages. See Au

Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

     Here, it is beyond dispute that defendants are in default.  Defendants have not responded

to the Complaint, nor have defendants even appeared in this action by counsel.  The failure by

the corporate defendant to obtain counsel in this case constitutes a failure to defend because the

corporate defendant, as a corporation, cannot proceed in federal court pro se.  See Shapiro,

Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating

that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones

v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for

requiring corporations, as "artificial" entities, to appear through counsel only).  Moreover,

despite proper service, defendants have not only failed to file an Answer or otherwise move with

respect to the Complaint, but defendants have also failed to respond either to plaintiffs' Motion

for a Default Judgment or the Order from this Court relating to the calculation of damages.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion").  Thus, plaintiffs' evidence on damages is undisputed.

Here, defendants' failure to appear in this action or respond to the Complaint and Motion for a Default Judgment warrant the entry of default judgment.

B. Copyright Infringement

In this case, plaintiffs allege that defendants infringed on plaintiffs' copyrighted works in violation of 17 U.S.C. §§ 501 et seq.  (Compl. ¶¶ 32-37).

The Copyright Act, 17 U.S.C. §§ 101 et seq. (the "Act"), is the principal statute protecting against copyright infringement.  The goal of copyright protection is to "encourage the creator of an original work in a medium of expression . . . by giving the creator the exclusive right 'to reproduce' the work, 'to prepare derivative works,' 'to distribute copies or phonorecords,' 'to perform' the work, and 'to display' the work."  Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F. Supp. 740, 760 (S.D.N.Y. 1988) (quoting 17 U.S.C. § 106).  Although the word "counterfeit" never appears in the Act, Section 501(a) of the Copyright Act proscribes the unauthorized reproduction and copying of works of an owner holding an exclusive copyright in an original work of authorship.  17 U.S.C. §§ 501(a), 102; see Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir. 1986).

"Copying" means "'the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106.'"  Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F.

Supp. 208, 210 (E.D.N.Y. 1994) (quoting S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989)).  Among the rights conferred upon the holder of a copyright are the exclusive rights to engage in and to authorize the reproduction of the copyrighted work in copies, 17 U.S.C. § 106(1), to prepare derivative works based on the copyrighted work, 17 U.S.C. § 106(2), and to distribute copies of the copyrighted work to the public by sale, rental, lease, or other transfer of ownership.  17 U.S.C. § 106(3).  See Microsoft Corp. v. Harmony Computers & Elecs., Inc., 846 F. Supp. at 210-11.

It is well established that in order to prove the elements of a copyright infringement action, a plaintiff must show:  (1) ownership of a valid copyright, and (2) that defendant violated one of the exclusive rights held by the plaintiff in the work.  Sony Music Entm't, Inc. v. Does 140, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004) (quotation marks and citations omitted); see also Capitol Records, LLC v. ReDigi, Inc., No. 12 CV 95, 2013 WL 1286134, at *4 (S.D.N.Y. March 30, 2013); Psihoyos v. Pearson Educ., Inc., 855 F. Supp. 2d 103, 116 (S.D.N.Y. 2012) (citation omitted); Zappa v. Rykodisc, Inc., 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011); Pearson Educ., Inc. v. Kumar, 721 F. Supp. 2d 166, 175 (S.D.N.Y. 2010) (citations omitted).

Turning to the first element required to establish a claim for infringement, the Act provides that "a certificate of [copyright] registration made before or within five years after first publication of the work shall constitute evidence of the validity of the copyright."  17 U.S.C. § 410(c); see also CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011); Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003).  While the presumption of validity is rebuttable, see Fonar Corp. v. Domenick,

105 F.3d 99, 104 (2d Cir.), cert. denied, 522 U.S. 908 (1997); Folio Impressions, Inc. v. Byer
Cal., 937 F.2d 759, 763 (2d Cir. 1991), it is the defendant's burden to prove the invalidity of the
copyright.  See Folio Impressions, Inc. v. Byer Cal., 937 F.2d at 763 (citation omitted).

Here, plaintiffs allege that Kamran, through its sale and distribution of the Crown TV
device and subsequent live streaming of the Network Plaintiffs' programming, has infringed on
plaintiffs' copyrights, and they seek damages based on 55 separate television episodes for which
plaintiffs have registered copyrights with the U.S. Copyright Office.  (Fonoroff Decl.[8] ¶ 4, Ex.
B).  In connection with their motion for default judgment, plaintiffs provided a listing of the
copyright registrations with the United States Copyright Office for the 55 works, which they
claim were among those subject to infringement by defendants' unauthorized distribution.  (See
Gupta Decl.,[9] Ex. B.).  Following the inquest, plaintiffs provided copies of the actual registration
certificates for all 55 of the copyrighted works.[10]  (Pls.' 9/7/18 Ltr.).[11]  See Lewinson v. Henry
Holt & Co., 659 F. Supp. 2d 547, 559 (S.D.N.Y. 2009) (citations omitted) (holding that "for any
work created after January 1, 1978, copyright automatically inheres upon the work's creation").
Since defendants have chosen not to appear in this action, plaintiffs' proof that they hold valid
copyrights to the listed works has not been challenged, and the Court finds that plaintiffs have
satisfied the first element required to establish a claim for copyright infringement.

With respect to the second element needed to establish an infringement claim, "[b]oth
unauthorized production and unauthorized distribution of copies of copyrighted material

---

[8] Citations to "Fonoroff Decl." refer to the Declaration of Alex Fonoroff in Support of Plaintiffs' Motion for Default
Judgment and Permanent Injunction, filed March 14, 2018, ECF No. 20.
[9] Citations to "Gupta Decl." refer to the Declaration of Akhilesh Gupta in Support of Plaintiffs' Motion for Default
Judgment and Permanent Injunction, filed March 14, 2018, ECF No. 20.
[10] Plaintiffs' counsel indicated that although defendants had infringed on numerous other works of the Network
Plaintiffs, they were only seeking damages for those with copyrights on file with the U.S. Copyright Office.
[11] Citations to "Pls.' 9/7/18 Ltr." refer to plaintiffs' letter filed September 8, 2018, ECF No. 37, attaching the 55
certificates of registration.

constitute an infringement of the copyright." Paramount Pictures Corp. v. Doe, 821 F. Supp. 82, 89 n.6 (E.D.N.Y. 1993) (citing 17 U.S.C. §§ 106(1) and (3)). Accordingly, plaintiffs must demonstrate that: "(1) the defendant has actually copied the plaintiff's work, and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) (quoting Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 122-23 (2d Cir. 1994) and citing Laureyssens v. Idea Grp., Inc., 964 F.2d 131, 139-40 (2d Cir. 1992) and Folio Impressions, Inc. v. Byer Cal., 937 F.2d at 759, 765 (2d Cir. 1991)).

In this case, plaintiffs allege that defendants, without authorization, are intercepting and broadcasting their actual television programs, clearly in violation of plaintiffs' exclusive rights under the Copyright Law to distribute and display these works to the public. Accordingly, the Court finds that the Complaint adequately alleges facts necessary to establish the elements of copyright infringement under the Copyright Act.

C. Individual Liability of Butt

Plaintiffs seek to impose liability against both Kamran and the individual defendant, alleging that the individual defendant Butt is the owner and registrant for Kamran and has been responsible for the conduct perpetrated against Plaintiffs. (Compl. ¶ 7). Section 101 of the Copyright Act "holds accountable 'any person [who] shall infringe the copyright.'" "Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1161 (2d Cir. 1971). All persons and corporations "who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." Broadcast Music, Inc. v. The Living Room Steak House, Inc., No. 14 CV 6298, 2016 WL 756567, at *4 (E.D.N.Y. Feb. 26, 2016) (citing

11

<u>Sygma Photo News, Inc. v. High Soc. Magazine, Inc.</u>, 778 F.2d 89, 92 (2d Cir. 1985)).  An individual may also be liable for infringing activities of a corporate defendant if he or she "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."  Id (citing <u>Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.</u>, 443 F.2d at 1162).

Plaintiffs allege that defendant Butt "owns and controls Kamran and the website for the Crown TV device." (Compl. ¶ 9).  Plaintiffs also allege that Butt "personally directs, supervises, controls and participates" in the infringing activities of Kamran, and also that he "directly profits" from the infringement.  (<u>Id.</u> ¶ 7).  Plaintiffs state that defendant Butt is a director and sole principal of Kamran, signed Kamran's most recent Hong Kong Companies Registry Annual Return in 2017, and wholly owns Kamran, holding all three million of its outstanding shares. (Id. ¶ 25).  Plaintiff also allege that Butt is the registrant and Kamran is the registrant entity of the Crown TV website, through which the infringing device is advertised.  (<u>Id.</u>; Pls.' Mem. at 5). Plaintiffs' expert affirmed that he conducted a search of historic domain records, which showed that defendant Butt registered the Crown TV website in 2013.  (Braak Aff. ¶ 6).  Plaintiffs' expert additionally affirmed that, when he operated a Crown TV device, it connected to an additional domain name that was also registered to defendant Butt.  (<u>Id.</u> ¶ 23).  Plaintiffs have therefore sufficiently alleged that the individual defendant has participated in the infringement and should be held jointly liable with the corporation for all damages stemming from the infringement.[12]

---

[12] Plaintiffs also bring claims under the Lanham Act, 15 U.S.C. § 1125(a), the New York General Business Law, and common law claims of trademark infringement and unfair competition.  Since plaintiffs are only seeking damages under the Copyright Act, the Court has not addressed the sufficiency of these allegations.

## II. Default Determination

Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with the inquest, the Court finds that plaintiff has sufficiently established liability as to warrant entry of a default judgment for the damages requested in the Complaint.

Here, it is beyond dispute that defendants are in default. Defendants have not responded to the Complaint, nor have defendants appeared in this action by counsel. Despite proper service, defendants have not only failed to file an Answer or otherwise move with respect to the Complaint, but defendants have also failed to respond to plaintiffs' Motion for a Default Judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion").

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further. Accordingly, it is respectfully recommended that plaintiffs' Motion for Default Judgment be granted.

## III. Damages

### A. Legal Standard

It is well settled that the burden is on the plaintiff to establish its entitlement to recovery. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158-59. When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See id.; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989));

Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988)).  However, plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:  "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, the Court held an inquest hearing on September 6, 2018.  Defendants failed to appear and did not respond to any of plaintiffs' submissions.  Accordingly, the Court finds that defendants have chosen not to participate in this action, despite being given adequate opportunity to be heard.  Thus, the Court proceeds to assess damages.

B. Damages Under the Copyright Act

Title 17, United States Code, Section 504 provides for damage awards in cases of copyright infringement.  Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer,. . . or (2) statutory damages as provided by subsection (c)."  17 U.S.C. § 504(a).  The statute and the cases in this circuit interpreting the statute have made it clear that the victim of a copyright infringement is entitled to elect damages based on the actual damages suffered, plus any additional profits, or he may elect statutory damages to be awarded within certain specified limits.  See Eros Entertainment, Inc. v. Melody Spot, LLC, No. 99 CV 1157, 2005 WL 4655385, at *7 (E.D.N.Y. 2005) (citing Twin Peaks Prods., Inc. v. Publications Int'l, 996 F.2d 1366, 1380 (2d Cir. 1993) for the proposition that a plaintiff may elect the statutory remedy where actual damages were not ascertainable)); see also Aleshouse v. Ultragraphics, Inc., 754 F.2d 467, 469 (2d Cir. 1985); Engel v. Wild Oats, Inc., 644 F. Supp. 1089, 1091 (S.D.N.Y. 1986).  However, statutory damages are only available to owners of copyrights that were registered "3 months after the first publication of the work or 1 month after the copyright owner . . . learned of the infringement."  17 U.S.C. § 412.  In this case, plaintiffs are only seeking to recover statutory damages based on 55 programs for which they have registered copyrights.  Id.; see Close-Up Int'l,Inc. v. Berov, No. 02 CV 2363, 2007 WL 4053682, at *7 (E.D.N.Y. Nov. 13, 2007).

Section 504(c) provides a range in which the court has discretion to award statutory damages between $750 and $30,000 per infringed work.  17 U.S.C. § 504(c)(1).  If the plaintiff can establish that defendant's infringement was willful, the court may award up to $150,000 per work "as the court considers just."  17 U.S.C. § 504(c)(2).  In determining whether a defendant has acted willfully, courts have held there is no need to find the infringer acted maliciously.  See Eros Entertainment, Inc. v. Melody Spot, LLC, 2005 WL 4655385, at *8 (citing Fitzgerald

Publ'g Co. v. Baylor Publ'g Co., 807 F.2d at 1115).  It is sufficient that the defendant had either actual or constructive knowledge that his actions constituted an infringement.  Id.; Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995) (stating that constructive knowledge or reckless disregard is sufficient and may be inferred from the defendant's conduct).  Courts have inferred reckless disregard sufficient to constitute willful knowledge from defendants' failure to defend an action.  See Tu v. TAD System Tech. Inc., No. 08 CV 3822, 2009 WL 2905780, at *5 (E.D.N.Y. 2009).

Under the Copyright Act, district courts have wide discretion in setting the amount of statutory damages.  See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d at 1116 (collecting cases).  Courts consider multiple factors in determining the amount of statutory damages, including the expenses saved and profits reaped by the defendant, the value of the copyright, the deterrent effect on the defendant and on others besides the defendant, whether the defendant has cooperated in providing records from which to assess the value of the infringing material, and whether the defendant's conduct was innocent or willful.  Id. at 1117.

Courts have found defendants' conduct to be willful and awarded maximum statutory damages when the defendant admitted knowledge of the copyrights and continued publication of infringing material.  See Twin Peaks Prods., Inc. v. Publications Intern., Ltd., 996 F.2d at 1381-82.  Courts have also awarded the maximum statutory damages when plaintiffs establish that the defendant received notice they did not have proper distribution rights.  See Hounddog Prods. LLC v. Empire Film Group, 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011).

Courts have awarded maximum statutory damages even in the context of a default where the Court has little to no evidence of defendants' profits.  See Tu v. TAD System Tech. Inc., 2009 WL 2905780, at *6; Entral Group Int'l LLC v. Honey Café on 5th Inc., No. 05 CV 2290,

16

2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006).  Where the infringing materials were advertised on the internet, courts have awarded the statutory maximum under the reasoning that advertising infringed materials over the internet gives defendants access to a "virtually limitless number of customers."  See Tu v. TAD System Tech. Inc., 2009 WL 2905780, at *6 (stating that in a default judgment where the record contains no evidence of the actual scope of defendants' sales, . . . "given the scope of the internet supermarket, such sale offerings are presumptively quite high").

In this case, plaintiffs seek the maximum statutory award of $150,000 based on defendants' willful violation of plaintiffs' copyrighted programming.  (Pls.' Mem. at 13, 16).  Plaintiffs have more than demonstrated that the defendants' infringement in this instance is deliberate and willful.  Not only have the defendants designed the Crown TV device to intercept and transmit plaintiffs' programming, but they promote and advertise their device and its capabilities on their webpage, using plaintiffs' trademarks and icons so that consumers will know that they will be able to access the plaintiffs' channels and programs.  (Tr. at 19, 29).  Defendants live-stream the infringing material over the internet 24 hours per day, seven days per week.  (Tr. at 28-30).  Moreover, as demonstrated by the attachments to the Fonoroff Declaration, plaintiffs have sent over 75 cease and desist letters advising defendants that plaintiffs are the registered owners to the various copyrights with the exclusive right to distribute and perform these programs.  (Fonoroff Decl., Ex. B).  Defendants have simply ignored these cease and desist letters and continued their infringing activities.  Finally, while the Copyright Act provides that a defendant may demonstrate that it was not aware of and had no reason to believe its actions constituted an act of infringement, the burden is on the defendant to advance such a defense.  17

U.S.C. § 504(c)(1). Here, the defendants have defaulted in the action and have not advanced such a defense.

Therefore, the Court finds, based on the evidence presented in plaintiffs' submissions and the evidence presented during the inquest, that defendants' infringements were willful.

Accordingly, the Court respectfully recommends that plaintiffs be awarded the maximum available statutory damages under the Copyright Act of $150,000 per work. Since plaintiffs have established that defendants infringed upon 55 of their registered works, the Court respectfully recommends that plaintiffs be awarded damages in the amount of $8,250,000, based on 55 works times $150,000 apiece.[13]


## IV. Permanent Injunction

### A. Legal Standard

Plaintiff also asks the Court to issue a permanent injunction enjoining defendants from continued copyright infringement. Courts may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" Dunkin' Donuts Inc. v. Peter Romanofsky, Inc., No. 05 CV 3200, 2006 WL 2433127, at *6 (E.D.N.Y.

---

[13] As noted supra, plaintiffs have also alleged claims of unfair competition under the Lanham Act. Section 35 of the statute authorizes the plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action" where plaintiff can establish a violation of his rights as a registered trademark holder. 15 U.S.C. § 1117(a). See Polo Fashions, Inc. v. Rabanne, 661 F. Supp. 89, 95 (S.D. Fla. 1986). In this case, since plaintiffs are only seeking damages under the Copyright Act, the Court has not assessed any additional damages based on the defendants' trademark violations. Plaintiffs are also entitled to receive an award of attorneys' fees for violations of the Lanham Act in cases of "willful infringement." Patsy's Brand Inc. v. IOB Realty Inc., 317 F.3d 209, 221 (2d Cir. 2003), and willful infringement may be established by virtue of a defendant's default. See Kenneth Jay Lane v. Heavenly Apparel, Inc. No. 03 CV 2132, 2006 WL 728407 at *7 (S.D.N.Y. Mar. 21, 2006); Tiffany(NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). However, at the inquest hearing held before this Court on September 6, 2018, plaintiffs' counsel confirmed that the plaintiffs were not seeking an award of fees and costs in this case. Thus, this Court has not recommended an award of fees and costs.

Aug. 8, 2006); Garis v. Uncut-RawTV, Inc., No. 06 CV 5031, 2011 WL 4404035, at *3 (E.D.N.Y. Jul. 5, 2011).

Both the Copyright Act and the Lanham Act empower district courts to grant permanent injunctive relief. Microsoft Corp. v. Atek 300 Computer, Inc., No. 06 CV 6403, 2008 WL 2284761, at *5 (E.D.N.Y. 2008) (citing 17 U.S.C. § 502; 15 U.S.C. § 1116). Specifically, the Copyright Act provides that "[a]ny court having jurisdiction of a civil action arising under this title may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).

The Second Circuit has held that "a permanent injunction is warranted where a party has succeeded on the merits." Study Logic, LLC v. Clear Net Plus, Inc., No. 11 CV 4343, 2012 WL 4329349 (E.D.N.Y. 2012) (citing Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)); see also Mamiya Am. Corp. v. Huayi Bros., Inc., 2011 WL 1322383, at *8. The plaintiffs must establish "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010). Accordingly, since plaintiffs have established their Copyright Act claims by virtue of defendants' default, and thereby succeeded on the merits, plaintiffs are entitled to an injunction if they can establish the remaining factors. See id.

Courts must not presume irreparable injury in copyright cases, Salinger v. Colting, 607 F.3d at 82, "but courts have tended to issue injunctions [in copyright cases] because to prove the loss of sales due to infringement is . . . notoriously difficult." Id. at 81. Plaintiffs here allege irreparable injury because defendants have directly competed with authorized subscriptions to

plaintiffs' television programming, thereby causing lost market share and price erosion for plaintiffs' legitimate services.  (Gupta Decl. ¶ 8; Janakiram Decl.[14] ¶ 8, George Decl.[15] ¶ 8, Mann Decl.[16] ¶ 9).  They have also disrupted the Network plaintiffs' relationships with authorized distributors in the United States, and by depriving the Network plaintiffs of their exclusive rights to control the distribution and quality of the copyrighted programming.  (Id.)  The defendants' infringement has interfered with plaintiffs' ability to develop a lawful market for their programming in the United States.  Additionally, plaintiffs assert that given defendants' default and their overseas location, defendants will likely attempt to evade paying any money judgment. (Pls.' Mem. at 25).

Plaintiffs have demonstrated that statutory damages, in the event plaintiffs were able to collect them from defendants, would be insufficient to compensate them for the defendants' copyright violations.  Absent an injunction, defendants could continue to stream plaintiffs' copyrighted Programming and continue to cause plaintiffs loss of market share, price erosion, and interfere with their ability to develop a lawful market for their programming in the United States.  See McGraw-Hill Global Edu. Holds., LLC v. Khan No. 16 CV 9030, 2018 WL 3094922, at *7 (S.D.N.Y. June 22, 2018) (granting a permanent injunction where the court found that absent injunctive relief, defendants might "continue to distribute unauthorized copies of plaintiffs' [materials]").

Furthermore, the balance of hardships and interest of the public weigh in favor of plaintiffs in this matter. See, e.g., Mc-Graw Hill Global Edu. Holds., LLC v. Khan, 2018 WL

[14] Citations to "Janakiram Decl." refer to the Declaration of Jaideep Janakiram in Support of Plaintiffs' Motion for Default Judgment and Permanent Injunction, filed March 14, 2018, ECF No. 20.
[15] Citations to "George Decl." refer to the Declaration of Thomas George in Support of Plaintiffs' Motion for Default Judgment and Permanent Injunction, filed March 14, 2018, ECF No. 20.
[16] Citations to "Mann Decl." refer to the Declaration of Surender Mann in Support of Plaintiffs' Motion for Default Judgment and Permanent Injunction, filed March 14, 2018, ECF No. 20.

3094922, at *7 (stating that "[w]hile the public has an interest in free expression, that interest is severely attenuated where the material being unlawfully distributed is readily available from plaintiffs"); WPIX, Inc. v. ivi, Inc., 691 F.3d 275, 285-87 (2d Cir. 2012) (finding that the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming); Rovio Entm't. Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (stating "it is axiomatic that an infringer . . . cannot complain about the loss of availability to offer its infringing product").

The Court respectfully recommends that plaintiffs' request for injunctive relief be granted, and that a permanent injunction enjoining defendants from further infringement be entered. Specifically, the Court respectfully recommends the Court enjoin defendants in accordance with the language set forth in pages 25-27, infra.

B. Injunction as to Non-Parties

Plaintiffs additionally seek two third party injunctions. First, plaintiffs seek an Order directing registries and registrars to disable the domain names used by the Crown TV device, the Crown Retransmission Service, or any comparable device or service offered by defendants now or in the future, and transfer those domains to plaintiffs. (Pls.' Mem. at 20). Courts within this circuit have granted orders transferring domain names to prevent further infringement of copyright holder's rights. See McGraw-Hill Global Edu. Holds., LLC v. Khan, 2018 WL 3094922, at *8 (citing cases); see also Paramount Pictures Corp. v. Does, No. 15 CV 5819, 2015 WL 10013786,

at *4 (S.D.N.Y. Nov. 24, 2015); (Toaltoan Decl., Ex. E;[17] Toaltoan Decl., Ex. D[18]).  Additionally, plaintiff DISH has obtained similar injunctive relief in other circuits for similar claims to the case at bar.  (See Toaltoan Decl., Ex. B[19]).

Other courts in this circuit, however, have declined to issue third party injunctions transferring a defendant's domain names to plaintiffs.  See McGraw-Hill Global Edu. Holds., LLC v. Khan, 2018 WL 3094922, at *8 (citing Cengage Learning, Inc. v. Shi, No. 13 CV 7772, 2017 WL 1063463, at *6 (S.D.N.Y. Mar. 21, 2017)); BWP Media USA Inc. v. NV Media Grp., Inc., No. 13 CV 8866, 2015 WL 2152679, at *3 (S.D.N.Y. May 6, 2015).  Additionally, courts have specifically noted the jurisdictional concerns with issuing third party injunctions impacting parties not before the court.  See North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd. Co., No. 10 CV 1630, 2011 U.S. Dist. LEXIS 158807, at *6  (S.D.N.Y. June 24, 2011) (finding that because the non-party domain registry website "was not joined as a party in the . . . lawsuit. . . [the court] lacked the authority to order [the non-party] affirmatively to act, i.e. to disable or otherwise render inactive defendants' infringing domain names and transfer them to plaintiffs' ownership and control").  As the domain name registries are not parties to this suit, the Court respectfully recommends that the plaintiffs' request for a third party injunction ordering the transfer of domain names be denied.

---

[17] Citations to "Toaltoan Decl." refer to the Declaration of L. Danielle Toaltoan, in Support of Plaintiffs' Motion for Default Judgment and Permanent Injunction, filed March 14, 2018, ECF No. 20.  Citations to "Toaltoan Decl., Ex. E" refer to the Order entered in Warner Bros. Entm't., Inc., v. Doe, No. 14 CV 3492 (S.D.N.Y. Oct. 3, 2014), Exhibit E to plaintiffs' Toaltoan Declaration, ECF No. 25-2.
[18] Citations to "Toaltoan Decl., Ex. D" refer to the Order entered in North Face Apparel Corp. & PRL USA Holdings, Inc. v. Fujian Sharing Imp. & Exp. Ltd., No. 10 CV 1630 (S.D.N.Y. Sept. 8, 2010), Exhibit D to plaintiffs' Toaltoan Declaration, ECF No. 25-2.
[19] Citations to "Toaltoan Decl., Ex. B" refer to the Order entered in China Central Television v. Create New Technology, No. 15 CV 1869 (C.D. Cal. May 31, 2016) (directing the "domain name registries . . . who receive actual notice of [the court's] Order . . . transfer . . .domain names to plaintiffs' ownership and control, including . . . by changing the registrar of record to the registrar of the plaintiffs' choosing), Exhibit B to plaintiffs' Toaltoan Declaration, ECF No. 25-2.

Plaintiffs additionally request that the Court issue an Order to numerous unnamed third parties including: "third parties who provide sales, distribution, shipping or logistics services for the Crown TV Devices and/or comparable systems, third parties who provide web, server or file hosting services, data center or colocation services, or primary and backup storage services used in connection with any of the enjoined activities, third parties who provide services in connection with the enjoined activities including but not limited to back-end service providers, service providers routing traffic or providing bandwidth, content delivery networks, and domain name server systems, search-based online advertising services, domain name registration privacy protection services, providers of social media services (including but not limited to Facebook and Twitter), user generated and online content services (including but not limited to YouTube), and data security services." (Toaltoan Decl., Ex. G). The plaintiffs seek an Order from the Court directed to these myriad third parties enjoining them from continuing to provide services to the defendants. (Pls.' Mem. at 20).

Plaintiffs argue that courts in this circuit have granted Orders directed to the same types of third parties such as internet service providers and web hosts identified by the plaintiffs. (See Toaltoan Decl. Ex. E; Toaltoan Decl. Ex. B.). In this case, where the defendant has ignored over 75 cease and desist letters and continues to infringe on plaintiffs' copyrighted material through the use of internet service providers and web hosts, and where the defendants are likely to avoid paying damages ordered, a third party injunction may be appropriate.

However, plaintiffs seek an overly broad injunction that would theoretically enjoin any currently unidentified third party who receives notice of this decision, including those not formally provided with notice of this action, and the theoretical injunction would be enforceable without any opportunity for any of these third parties to be heard. Additionally, while plaintiffs do provide

23

a non-exhaustive list of some internet servers and domain names against whom plaintiffs seek an order,[20] the list does not contain an explanation for why all of these internet servers and domain names were chosen. While plaintiffs have cited several cases in which similar orders were entered, the orders in those cases were form orders seemingly prepared by plaintiffs and there was no analysis provided by any of the issuing courts explaining the court's reasoning in granting such a third party injunction. Thus, these cases provide little assistance in determining whether such an Order is appropriate under the circumstances of this case.

The Court therefore respectfully recommends that plaintiffs' request for a third party injunction transferring domain names and enjoining non-parties be denied without prejudice to renew at such time as plaintiffs can identify specific entities or individuals to be enjoined.

Plaintiffs request post-judgment discovery in the aid of satisfying the Court's judgment. Plaintiffs specifically request post-judgment discovery to identify domain privacy services, internet service providers and social media platforms that might contain the location of defendants' assets to aid in satisfying the Court's judgment. This post-judgment discovery could also provide the identity of the third parties that may be hosting the defendants' services. The Court has authority to grant broad post-judgment discovery in aid of execution of a judgment. Aurelius Capital Master, Ltd., v. Republic of Argentina, 589 Fed.Appx. 16 (2d Cir. 2014). Accordingly, the Court respectfully recommends that plaintiffs request for post-judgment discovery in this case in aid of enforcing the Court's judgment be granted.

---

[20] Specifically, plaintiffs seek an injunction against "all those persons or entities acting in active concert or participation with defendants (including but not limited to parties that procure or provide sales, distribution, shipping or logistics services, or web, server or file hosting services on behalf of defendants, including but not limited to those parties listed in Exhibit 2 hereto) and all persons and entities who receive actual notice of this Judgment and Order" (Toaltoan Decl., Ex. G). Exhibit 2 of Exhibit G of the Toaltoan Declaration is a chart consisting of IP addresses and domain names with hosts located in the United States, China, Canada, the United Kingdom, France, Hong Kong, and Singapore. (Id.) The chart lacks any additional information as to how plaintiffs determined the identity of these addresses as being facilitators of the infringement, nor is there any basis set forth as to the jurisdiction of this Court to impose such an Order on these third parties.

CONCLUSION

The Court respectfully recommends that the plaintiffs be awarded $8,250,000.00 in statutory damages based on defendants' violation of plaintiffs' registered copyrights. The Court additionally respectfully recommends that the plaintiffs' request for an order directed at third party registries and registrars to transfer domains used by defendants to plaintiffs, and to unidentified third parties be denied without prejudice to renew. The Court additionally respectfully recommends that plaintiffs request for post-judgment discovery in this case in aid of enforcing the Court's judgment be granted. The Court finally respectfully recommends that plaintiffs be awarded a permanent injunction enjoining defendants from further infringement. Specifically, the Court respectfully recommends that the Court enjoin defendants, and all of their parents, subsidiaries, affiliates, officers, agents, servants and employees, and all officers, agents, servants and employees of their parents, subsidiaries and affiliates from engaging in the following activities:

1) Distributing, selling, advertising, marketing or promoting any Crown TV Device[21] and/or comparable system[22] that makes any infringing Crown TV Apps,[23] any Retransmission Services or Plaintiffs' copyrighted programming available to users of that device or comparable system;

2) Transmitting, retransmitting, assisting in the transmission of, requesting transmission of, streaming, hosting, or providing unauthorized access to, or otherwise publicly performing, directly or indirectly, by means of any device or process, plaintiffs' copyrighted programming;

---

[21] References to "Crown TV device" mean the television set-top devices marketed under the names "Crown TV" or "Crown IPTV."

[22] References to "Comparable system" mean any device, data transmission service, or application through which defendants provide users unauthorized access to plaintiffs' copyrighted programming, including by means of any peer to peer or internet based transmission, file sharing or content delivery technology.

[23] References to "Crown TV Apps" mean any Crown TV applications available through the menu options on the Crown TV device whereby plaintiffs' copyrighted programming is delivered, distributed, transmitted and/or publicly performed without authorization.

3) Authorizing, hosting, reproducing, downloading, selling or otherwise distributing infringing Crown TV Apps, including without limitation offering them in any app store, loading them onto any Crown TV device, or comparable system; offering or providing them on any internet website or other internet accessible location; or providing infringing Crown TV Apps to consumers on separate media;

4) Creating or providing assistance to others in creating infringing Crown TV Apps or a comparable system;

5) Advertising, displaying, marketing or otherwise promoting any of the infringing Crown TV Apps, including without limitation publicly displaying any of the plaintiffs' copyrighted programming in connection therewith or in connection with any Crown TV device or comparable system, including without limitation via the Crown TV websites;

6) Distributing, selling, advertising, marketing or promoting any Crown TV Device or comparable system that contains, connects to, or offers for download any infringing Crown TV Apps or promotes any infringing Crown TV Apps through the inclusion of icons for said infringing Crown TV Apps.

7) Distributing, selling, advertising, marketing or promoting any Crown TV device that contains, connects to, offers for download, transmits, assists in the transmission of, streams, hosts, provides access to, or otherwise publicly performs, directly or indirectly, by means of any device or process, plaintiffs' copyrighted programming without permission;

8) Distributing, selling, advertising, marketing or promoting any comparable system that contains, connects to, offers for download, transmits, assists in the transmission of, streams, hosts, provides access to, or otherwise publicly performs, directly or indirectly, by means of any device or process, plaintiffs' copyrighted programming without permission;

9) Providing or controlling servers that contain or stream any of plaintiffs' copyrighted programming, or provide operational or other support to any Crown TV device in order to facilitate delivery of plaintiffs' copyrighted programming;

10) Assisting with end-user reproductions or transmissions of any of plaintiffs' copyrighted programming through a tracker server, or any other server or software that assists users or devices in locating, identifying, or obtaining reproductions or transmissions of any of plaintiffs' copyrighted programming, including from other uses offering reproductions or transmissions of any of plaintiffs' copyrighted programming; and/or

11) Otherwise infringing plaintiffs' rights in their copyrighted programming, whether directly, contributorily, vicariously or in any other matter;

12) Engaging in any activities having the object or effect of fostering infringement of plaintiffs' copyrighted programming, whether through the Crown TV Device, the Crown TV Apps, any comparable system or otherwise, including without limitation engaging in any of the following activities:

    a. Advertising or promoting unauthorized access to or the availability of plaintiffs' copyrighted programming;

    b. Encouraging or soliciting others to transmit or reproduce plaintiffs' copyrighted programming;

    c. Encouraging or soliciting others to upload, post or index any files that constitute, correspond, point or lead to any of plaintiffs' copyrighted programming;

    d. Encouraging or soliciting others to offer transmission of plaintiffs' copyrighted programming,

    e. Providing technical assistance, support services or servers to others engaged in infringement, or seeking to infringe, plaintiffs' copyrighted programming

    f. Creating, maintaining, highlighting or otherwise providing access to lists or forums that include, refer to or signal the availability of plaintiffs' copyrighted programming;

    g. Providing hyperlinks to or other means of accessing infringing copies of plaintiffs' copyrighted programming;

    h. Including references to plaintiffs' copyrighted programming or infringing Crown TV Apps in promotional materials and/or

    i. Creating, maintaining or providing access to infringing Crown TV Apps.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
   September 25, 2018

/s/ Cheryl L. Pollak
_____
Cheryl L. Pollak
United States Magistrate Judge